**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

CAMERON CATES,

                    Plaintiff,

       v.                                          3:21-cv-00805 (AMN/ML)

JARED SCHLEMOVITZ, d/b/a JUNTO SOUNDS,
PROCTOR & GAMBLE CORPORATION, d/b/a
FEBREZE, GREY GLOBAL GROUP LLC, and
WPP GROUP USA INCORPORATED,

                    Defendants.
_____

**APPEARANCES:**                                    **OF COUNSEL:**

**CAMERON CATES**
South New Berlin, NY 13843
*Plaintiff pro se*

**GORDON & REES SCULLY MANSUKHANI**        **RONALD A. GILLER, ESQ.**
18 Columbia Turnpike, Suite 220
Florham Park, NJ 07932
*Attorneys for Defendant Jared Schlemovitz d/b/a*
*Junto Sounds*

**DAVIS & GILBERT LLP**                   **MARC J. RACHMAN, ESQ.**
1675 Broadway                             **JENNIFER T. KLAUSNER, ESQ.**
New York, New York 10019                **DANIELLE C. ZOLOT, ESQ.**
*Attorneys for Defendants Procter & Gamble*
*Corporation d/b/a Febreze, Grey Global Group LLC,*
*and WPP Group USA, Inc.*

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.**       **INTRODUCTION**

      Presently before the Court is Defendants Jared Schlemovitz ("Schlemovitz"), Procter &

Gamble Corporation ("P&G"), Grey Global Group LLC ("Grey"), and WPP Group USA, Inc.'s

("WPP" and collectively, "Defendants") motion to dismiss Plaintiff Cameron Cates's ("Plaintiff") Amended Complaint, Dkt. No. 43[1] (the "Amended Complaint"), with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dkt. Nos. 46-49 (the "Motion").

For the reasons set forth below, the Motion is granted in its entirety, and the Amended Complaint is dismissed with prejudice.

## II.      BACKGROUND

### A.    FACTUAL BACKGROUND

The following facts are drawn from the Amended Complaint and are assumed to be true for purposes of ruling on the Motion.  *See Div. 1181 Amalg. Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (*per curiam*).

#### 1.    Plaintiff's Development and Distribution of the Composition

Plaintiff Cameron Cates is a multi-disciplinary artist who has created musical compositions, orchestrations, and other works in his career as a musician, composer, and maestro. Dkt. No. 43 at ¶ 10.  In 1982, Plaintiff composed a song, "She Loves Her Job (and I Love Her Too)."  *Id.* at ¶ 11; *see* Dkt. Nos. 43-1 (handwritten sheet music), 43-2 (audio recording submitted to Court).  Plaintiff registered the finished sound recording of the song (the "Composition"), along with eight other finished sound recordings, with the United States Library of Congress's Copyright Office on February 24, 1983, receiving registration code PAu 484-226.  *See* Dkt. No. 43 at ¶¶ 11-13.  The Composition contains a "five note melodic hook notated in the plaintiff's original manuscript measures five and six in sequence," which five-note sequence, divorced from the accompanying words, comprises the allegedly infringed work (the "Subject Work").  Dkt. No. 43

---

[1] Citations to docket entries utilize the pagination generated by CM/ECF docketing system and not the documents' internal pagination.

at ¶ 14.  In the audio recording, the Subject Work is audible at 0:08-0:09.  Dkt. No. 43-2.

Plaintiff alleges that the Composition was broadcasted, performed publicly, and available online over several decades prior to the alleged infringement in or about 2017.  Dkt. No. 43 at ¶¶ 15-18, 22-24, 26-27, 29-30.  Plaintiff identifies two specific occasions and one general occasion of public radio broadcasts of the Composition:

- One time on July 14, 1983, by Columbia University's WKCR 89.9 FM with artist attribution to a New York metropolitan area audience, Dkt. No. 43 at ¶¶ 16-17;

- One time in 1992, by WNSR 105.1 FM 'Soft Rock' to a New York metropolitan area audience, *id*. at ¶ 29; and

- "[I]n rotation" in the 1990s by WVOX 1460 AM in New Rochelle, New York.  *Id*. at ¶ 30.[2]

Additionally, Plaintiff alleges twelve specific occasions and two general occasions of his performance of the Composition for the public or paid audiences:

- In 1985 at a "Chillies" in Manhattan, *id*. at ¶ 18;

- In 1988 at St. James Park in the Bronx, *id*.;

- In 1990 at "CBGB's" on Bowery, *id*.;

- In 1992 at "The Red Parrot" in Manhattan, *id*.;

- In 1998 at "Rectangles" in Manhattan, *id*.;

- In 1999 at the "Sun Mountain Café" in Greenwich Village, "West End Gate" in Manhattan, and "Le Bar Bat" in Manhattan, *id*.;

- In 2000 at "Café 44" in Manhattan, *id*.;

- In 2001 twice as part of an original musical presented at "the Taipei Theatre" in Manhattan, *id*. at ¶¶ 18, 22; Dkt. No. 43-3;

- In 2012 at the "Gershwin Hotel" in Manhattan, Dkt. No. 43 at ¶ 18; and

---

[2] Plaintiff notably does not clarify what being played "in rotation" means quantifiably, nor does he allege that the unenumerated WVOX broadcasts reached a New York City audience.

- At "many other venues throughout New York …."  *Id*.

Plaintiff also alleges that he has played the Composition "[f]rom 1998 to the present" at an annual 5K run along Manhattan's upper west side, and indeterminate half marathons "in 3 of the 5 boroughs."  *Id*. at ¶ 23.

Further, Plaintiff alleges that beginning in 2005 he began publishing some of his musical works, including the Composition, onto an internet platform called "Acid Planet."  *Id*. at ¶ 24.  The Composition allegedly remained accessible on Acid Planet until some point in 2018, when the platform's contents were erased.  *Id*. at ¶ 25.  Seventy-seven of Plaintiff's works—not including the Composition—remain accessible on another internet platform, "Internet Archive."  *Id*. at ¶ 25. Finally, Plaintiff alleges that in the late 1980s he was invited to submit his works, including the Composition, to music industry award-winner David Sonenberg.  *Id*. at ¶ 27.

### 2.    Plaintiff's Allegations of Defendants' Infringement

Plaintiff alleges that Defendants[3] have used a five-note "La, la, la, la, la" sequence in various P&G advertisements for Febreze products broadcasted to the public since 2017 (the "Allegedly Infringing Works" or "AIWs"), that is "strikingly similar" to his Subject Work's "cadence, melody, and meaning."  *Id*. at ¶ 15.  Plaintiff contends that Defendants' infringement includes an album of eight songs created for the public compiled in an album titled "The Freshness," which has been available for public consumption since March 11, 2019.  *Id*. at ¶¶ 38-40.  Plaintiff alleges that by "target[ing] middle aged head of household women" in their Febreze advertisements, P&G attempted to attract customers from "the group celebrated in the title and

---

[3] Schlemovitz is a production manager and founder of Junto Sounds, a production company.  *See* Dkt. No. 43 at ¶ 6; Dkt. No. 47 at 29; Dkt. No. 52 at 6.  The Amended Complaint alleges that Grey, and by extension its holding company WPP, was the advertising agency for P&G's "Febreze" brand that hired Junto Sounds to produce content, including the AIWs.  *See* Dkt. No. 43 at ¶¶ 7-9, 41; Dkt. No. 47 at 29-30; Dkt. No. 51 at 10; Dkt. No. 52 at 11-12.

lyrics of" the Composition.  *Id.* at ¶ 35.  One song from The Freshness, "Nobody Do It Fresher," was a Clio Awards Short Listed entry in 2019, and "ends with the same five note tag line taken from" the Subject Work.[4]  *Id.* at ¶ 41.

Plaintiff alleges that "[i]t is likely that Junto Sounds, their intermediaries, and or collaborators, heard Plaintiff's song 'She Loves her Job' … over the airwaves or [at] live performances at one of the venues in … New York or heard a promotional tape that was in the hands of agents, A&R, or musicians …."  *Id.* at ¶ 31.  In support, Plaintiff notes that Defendants could have accessed the Acid Planet website when it allegedly still contained the Composition, and that Schlemovitz worked at Crushing Music—a "production house that writes original music" in addition to "act[ing] as a music search engine,"—from 2002 to 2004.  *Id.* at ¶¶ 32-34; Dkt. No. 43-5.  Further, Plaintiff notes that when Schlemovitz worked as VP Global Director of Music at Music Beast from 2008 to 2009 he was reported as saying "[a]s long as the music is good, who cares where it came from?" in a Music Beast press release.  Dkt. No. 43 at ¶ 36.

### B.   The Instant Action and Motion

Plaintiff alleges that "in early Spring 2021" he became aware of Defendants' alleged infringement.  *Id.* at ¶ 37.  Plaintiff subsequently filed a complaint asserting a single claim for copyright infringement pursuant to 17 U.S.C.A. § 101 *et seq.* on July 15, 2021.  *See* Dkt. No. 1 at ¶¶ 22-27.  Defendants moved to dismiss the original complaint, *see* Dkt. Nos. 24-28, and this Court (Kahn, J.) granted the motion and dismissed the complaint without prejudice and with leave to

---

[4] The AIWs often appear in P&G's Febreze advertisements immediately following the word "Febreze."  *See* Dkt. No. 43 at ¶¶ 15, 41.  *See, e.g.*, *Febreze PLUG TV Spot, 'First Day Fresh,'* iSpot.tv, https://www.ispot.tv/ad/2JeH/febreze-plug-first-day-fresh (media available at 0:27-0:28) (last visited Sept. 20, 2023);  *The Most Undisruptive Radio Ads*, Clio Awards, https://clios.com/awards/winner/audio-technique/febreze-proctor-gamble/the-most-undisruptive-radio-ads-65945 (media available at 1:32-1:39) (last visited Sept. 20, 2023).

amend.  Dkt. No. 40.[5]  Plaintiff timely filed the Amended Complaint on June 24, 2022, reasserting

a single claim for copyright infringement.  Dkt. No. 43.  Defendants' Motion followed, which

Plaintiff opposed, Dkt. No. 51, and Defendants submitted a reply in support of the Motion, Dkt.

No. 52.  The Motion is thus ripe for determination.

## III.    STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) tests

the legal sufficiency of a party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d

Cir. 2007).  In considering legal sufficiency, a court must accept as true all well-pled facts in the

complaint and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v.

Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption, however,

does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation

omitted).  Although a court's review of a motion to dismiss is generally limited to the facts

presented in the pleadings, the court may consider documents that are "integral" to the pleadings

even if they are neither physically attached to, nor incorporated by reference into, the pleadings.

*See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time

Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the

claim," FED. R. CIV. P. 8(a)(2), with sufficient factual "heft to show that the pleader is entitled to

relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted).  Under this

standard, a pleading's "[f]actual allegations must be enough to raise a right of relief above the

---

[5] In ruling on Defendants' first motion to dismiss, the Court assumed that Plaintiff had a valid
copyright to the Subject Work but found that Plaintiff had inadequately alleged actual copying.
Dkt. No. 40 at 4.  The Court held that Plaintiff had not alleged any direct evidence of actual copying
and that Plaintiff's circumstantial allegations of copying failed to allege facts concerning wide
dissemination, and implausibly alleged Defendants' access through a chain of events.  *Id*. at 5-6.

speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (citation omitted).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the ... complaint must be dismissed."  *Id.* at 570.

"[I]n a *pro se* case … the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'"  *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting, *inter alia*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  The Second Circuit has held that courts are obligated to "'make reasonable allowances to protect *pro se* litigants'" from inadvertently forfeiting legal rights merely because they lack a legal education.  *Govan*, 289 F. Supp. 2d at 295 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

## IV.     DISCUSSION

"To state a claim for copyright infringement, a plaintiff must plausibly allege facts that demonstrate (1) ownership of a valid copyright, and (2) the defendants' copying of constituent, original elements of plaintiff's copyrighted work."  *McDonald v. West*, 138 F. Supp. 3d 448, 453 (S.D.N.Y. 2015), *aff'd*, 669 F. App'x 59 (2d Cir. 2016).  "[A] plaintiff with a valid copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's [work]."  *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d

57, 63 (2d Cir. 2010) (quoting *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999)); *Ringgold v. Black Ent. Television, Inc.*, 126 F.3d 70, 74 (2d Cir. 1997) (explaining that "'substantial similarity' is more properly used, after the fact of copying has been established, as the threshold for determining that the degree of similarity suffices to demonstrate actionable infringement").

### A.   Plaintiff's Copyright

"A certificate of registration from the United States Register of Copyrights constitutes prima facie evidence of the valid ownership of a copyright." *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 51 (2d Cir. 2003) (citing 17 U.S.C. § 410(c)).  Plaintiff alleges—and Defendants do not dispute—that he effectively registered a sound recording of the Composition on February 24, 1983, *see supra* § II.A.1, and as such, the Court assumes Plaintiff's copyright of the submitted recording of the Composition is valid for the purposes of this motion.  *See Clanton v. UMG Recordings, Inc.*, 556 F. Supp. 3d 322, 327 (S.D.N.Y. 2021).  Plaintiff has not, however, separately pled or otherwise shown a valid copyright for the Subject Work.  *See supra* § II.A.1.  As such, the Court considers whether Plaintiff's copyright extends to the Subject Work in the discussion below.  *See infra* § IV.C.

### B.   Plaintiff's Allegations that Defendants Actually Copied the Subject Work

"Actual copying may be established by direct or indirect evidence." *Boisson v. Banian, Ltd.*, 273 F.3d 262, 267 (2d Cir. 2001).  "Because direct evidence of copying is seldom available, a plaintiff may establish copying circumstantially 'by demonstrating [1] that the person who composed the defendant's work had access to the copyrighted material,' and [2] that there are similarities between the two works that are 'probative of copying.'" *Jorgensen*, 351 F.3d at 51 (quoting respectively *Herzog v. Castle Rock Ent.*, 193 F.3d 1241, 1249 (11th Cir. 1999) and *Repp v. Webber*, 132 F.3d 882, 889 (2d Cir. 1997)).  Access "can be demonstrated through either (1) a

particular chain of events by which the defendant might have gained access to the work, or (2) facts showing that plaintiff's work was widely disseminated, such that access can be inferred." *Clanton*, 556 F. Supp. 3d at 328 (quotations omitted). However, "access cannot be based on mere 'speculation or conjecture[;]'" rather, a "plaintiff must offer 'significant, affirmative and probative evidence.'" *Jorgensen*, 351 F.3d at 51 (quoting respectively *Gaste v. Kaiserman,* 863 F.2d 1061, 1066 (2d Cir. 1988) and *Scott v. Paramount Pictures Corp.*, 449 F. Supp. 518, 520 (D.D.C. 1978)).

### 1.   Plaintiff's Allegations that Defendants Accessed the Composition

As with Plaintiff's original Complaint, the Amended Complaint does not directly allege actual copying beyond the conclusory assertion that Defendants "reproduced [or] synchronized" Plaintiff's Composition into their AIWs. *Compare* Dkt. No. 40 at 5, *with* Dkt. No. 43 at ¶¶ 31, 37. Accordingly, the Court turns to Plaintiff's circumstantial allegations of copying.

Unlike the original Complaint, the Amended Complaint includes numerous allegations that go to Defendants' possible access to the Composition—and by extension, the Subject Work—prior to the creation of the AIWs. Plaintiff alleges that "[i]t is *likely* that Junto Sounds, their intermediaries, and or collaborators, heard [the Composition] … over the airwaves or live performances … or heard a promotional tape that was in the hands of agents, A&R, or musicians …." Dkt. No. 43 at ¶ 31 (emphasis added). The Court views this conclusory allegation in its most favorable light in ascertaining whether Plaintiff has plausibly pled a particular chain of events or sufficiently widespread dissemination to support his infringement claim.

### a.   Allegations of a Chain of Events to Access the Composition

"A 'chain of events' theory of access may 'rely on a somewhat attenuated chain of events extending over a long period of time and distance.'" Dkt. No. 40 at 5 (quoting *Gaste*, 863 F.2d at 1067). "Furthermore, 'a copyright infringement plaintiff need not prove that the infringer actually

saw the work in question; it is enough to prove that the infringer (or his intermediary) had the mere opportunity to see the work and that the subsequent material produced is substantially similar to the work.'" *Id.* (quoting *Jorgensen*, 351 F.3d at 55). However, the rule "that all a plaintiff must show is that the defendant 'had the mere opportunity to see the work' applies only when the plaintiff has plausibly alleged a chain of events through which his work was accessed by the defendant." *Clanton*, 556 F. Supp. 3d at 329-30 (citing *Jorgensen*, 351 F.3d at 55).

Although Plaintiff's Amended Complaint includes many allegations that might support his role in the chain of events by which Defendants may have accessed the Composition, his allegations concerning Defendants' role(s) in the would-be chain(s) are lacking. Among Plaintiff's many allegations of distribution, public broadcast, or performance of the Composition, the only allegations that might support a 'chain of events' theory is the fact that Plaintiff may have sent the Composition to someone working for or associated with Defendants.[6] *See* Dkt. No. 43 at ¶¶ 26-27. However, as Defendants note, Plaintiff's pleading does not include allegations that he sent the Composition to anyone in particular. *Cf. id.* at ¶ 26 (Plaintiff "has promoted his songs and 'Sound' to dozens of NY Record companies A&R department, agents, clubs, and radio stations."). At no point does Plaintiff specifically allege that he sent the Composition to particular recipients, nor does he allege a connection between any recipient and any Defendant.[7] *See, e.g.*, *Klauber Bros., Inc. v. QVC, Inc.*, No. 1:19-cv-09321, 2020 WL 7029088, at *8-9 (S.D.N.Y. Nov. 30, 2020) ("Without some fact specific to Defendants here, the FAC does not meet the demand of [FED. R.

---

[6] Plaintiff's remaining allegations concerning access are considered below with respect to widespread dissemination. *See infra* § IV.B.1.b.

[7] Were the Court to consider Plaintiff's attempts to supplement his allegations in his Opposition, the analysis would not change. The new allegations—that Plaintiff sent the Composition to David Sonenberg, as well as "David Carpin of Arista, and Mark Bishner of RCA, and Joey Gardner of Tommy Boy and dozens more," Dkt. No. 51 at 9—fall short of Plaintiff's modest pleading burden because he still does not allege a connection between any alleged recipient and any Defendant.

CIV. P.] 8, which requires that Defendants' infringing behavior be pleaded with some specificity."). Rather, Plaintiff seeks to cast aspersions on Defendants, and in particular Schlemovitz, by citing to information or quotations out of context to imply nefarious business practices. *See supra* § II.A.2. These allegations are not sufficient, however, to plead a plausible chain of events by which Defendants accessed the Composition. *See Gal v. Viacom Int'l, Inc.*, 518 F. Supp. 2d 526, 538-39 (S.D.N.Y. 2007) (finding plaintiff failed to show access where she "conceded that she herself never submitted her Screenplay to any of the defendants or persons employed by defendants who were involved in the creation of [the allegedly infringing work], and that she had no knowledge that any of the people to whom she had sent or shown any version or part of her Screenplay had shown it to any of the defendants or anyone connected with them"). As such, the Court finds that Plaintiff has not adequately pled a chain of events theory of access.

**b.    Allegations of Widespread Dissemination of the Composition**

"A work is 'widely disseminated' when it has had 'considerable commercial success' or is 'readily available on the market.'" *Webb v. Stallone*, 910 F. Supp. 2d 681, 686 (S.D.N.Y. 2012) (quoting *Silberstein v. Fox Ent. Grp.*, 424 F. Supp. 2d 616, 627 (S.D.N.Y. 2004)). Considerable commercial success or availability on the market can be shown by status on popular music charts, *see, e.g.*, *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988, 998 (2d Cir. 1983); *Acuff-Rose Music, Inc. v. Jostens, Inc.*, 988 F. Supp. 289, 293 (S.D.N.Y. 1997), or where a plaintiff's works were played by radio stations, performed live, or millions of copies are sold, *see, e.g.*, *Arnstein v. Porter*, 154 F.2d 464, 469 (2d Cir. 1946), *abrogated on other grounds, as recognized in Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1319 (2d Cir. 1975).

With respect to widespread dissemination, the Court considers Plaintiff's allegations of (1) his distribution of the Composition and musical works containing the Composition to individuals

in the music industry, (2) his publication of the Composition online, (3) public broadcasts of the Composition, and (4) his performance of the Composition at various public and paid-entry venues in the New York metropolitan area from 1985 through the present. *See supra* § II.A.1. First, Plaintiff's allegations of distribution of his works, including the Composition, to various individuals in the music industry without more—such as specific Defendants or their agents to whom Plaintiff distributed his Composition—cannot sustain Plaintiff's burden under Federal Rule of Civil Procedure 8. *See supra* § IV.B.1.a; *Klauber Bros.*, 2020 WL 7029088, at *8-9; *Polsby v. St. Martin's Press*, No. 97-CIV-690, 1999 WL 225536, at *3 (S.D.N.Y. April 19, 1999) (finding no access to plaintiff's work where "plaintiff rest[ed] almost exclusively on the naked claim that she disseminated her work to 'numerous persons' in and around Washington, D.C. in the years prior to publication of" the allegedly infringing work). Second, Plaintiff's allegation that the Composition was available online during the period Defendants created the AIWs is insufficient as a matter of law, *see Clanton*, 556 F. Supp. 3d at 328 ("As a matter of law, the fact that the Subject Composition was posted on the internet is insufficient on its own to show 'wide dissemination.'"); *O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, 590 F. Supp. 2d 500, 515 (S.D.N.Y. 2008) ("the mere fact that [plaintiff]'s work was posted on the internet prior to the creation of defendants' work is insufficient by itself to demonstrate wide dissemination"), and is not supported by Plaintiff's circumstantial evidence. Specifically, while Plaintiff alleges the Composition was posted on a public platform, the historical internet capture of Plaintiff's previously available works does not indicate that the Composition was available. *See supra* § II.A.1. Notwithstanding that possible evidence, Plaintiff also fails to allege facts that would be within his knowledge, such as the extent of the exposure generated by the Composition's online presence in terms of numbers of page views, unique listeners, or plays. *Clanton*, 556 F. Supp. 3d

at 328 & n.2; *Silberstein*, 424 F. Supp. 2d at 621, 627 ("no inference of access may [] be drawn from media coverage absent any signs that [the subject work] was, even for a moment, popular or widely available for public consumption"); *Klauber Bros.*, 2020 WL 7029088, at *8; *but cf. ABKCO*, 722 F.2d at 998 (concluding that plaintiff showed access by wide dissemination because the song was number one on the Billboard charts in the United States and in the top thirty hits in England for several weeks); *Acuff-Rose*, 988 F. Supp. 2d at 293 (finding that defendant had access to the song by wide dissemination because it was a the top-five ranking country hit). Third, of the alleged broadcasts, only one was in New York in the 1990s, the other New York broadcast was in the early 1980s and the third was too removed from the city to raise an inference of plausible access. *See supra* § II.A.2 & n.2. A handful of instances of radio play in the decades between creation of the Composition and the AIWs does not raise a plausible question of access alone. *See, e.g.*, *Novak v. Broad. Co.*, 752 F. Supp. 164, 170 (S.D.N.Y. 1990) (concluding that plaintiff failed to show wide dissemination where the work was broadcasted nationally at least four times).

Finally, Plaintiff's allegations concerning his many public performances of the Composition between 1985 and the creation of the AIWs, raise a closer question, but do not on their own establish Defendants' access. *See supra* § II.A.1; *Spiegelman v. Reprise Recs.*, No. 94 CIV. 4763 (JSM), 1995 WL 322164, at *2-3 (S.D.N.Y. May 26, 1995), *aff'd*, 101 F.3d 685 (2d Cir. 1996) (finding plaintiff failed to show access through several live performances of the allegedly infringed work where here had "no knowledge that [a defendant] or anyone associated with him was present at a performance"). When considered in the context of Plaintiff's other allegations of dissemination, however, the allegations could push Plaintiff's theory of widespread dissemination from possible to plausible. Ultimately, reading the Amended Complaint in the light most favorable to Plaintiff, it may be plausible that the Composition was sufficiently widely

disseminated throughout the New York City metropolitan area that Defendants, including Schlemovitz—who had been active in the music scene in New York for a number of years during which the Composition was broadcasted to and performed for the public—became aware of the Composition and might have turned such access into the alleged copy of the Subject Work.  *See, e.g.*, *Clonus Assocs. v. Dreamworks, LLC*, 457 F. Supp. 2d 432, 441-42 (S.D.N.Y. 2006) ("a work only needs to be 'readily available on the market' for a party to establish wide dissemination") (quoting *Silberstein*, 424 F. Supp. 2d at 627-28).  As such, the Court assumes, without deciding, that the Subject Work was sufficiently widely disseminated that Defendants may have accessed it.

### 2. Probative Similarities

Following a showing of access, "a plaintiff may establish [actual copying] by demonstrating probative similarity."  *Boone v. Jackson*, 206 F. App'x 30, 31 (2d Cir. 2006); *see Buttner v. RD Palmer Enters., Inc.*, No. 5:13-CV-0342 (LEK/ATB), 2015 WL 1472084, at *6 & n.5 (N.D.N.Y. Mar. 31, 2015) ("Similarity that relates to unprotected elements is probative only of copying—not wrongful copying—and is referred to as 'probative similarity'") (quoting *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 101 (2d Cir. 2014)).  The Court need not engage in an analysis of the protectable and non-protectable elements of the works in question because the Subject Work is a simple five-note sequence, apart from the lyrics that accompany it in the Composition, with no allegations of any original or novel use of tempo, repetition, or cadence in its presentation in the Composition.  *See* Dkt. No. 43 at ¶ 14; *cf. Boone*, 206 F. App'x at 32 (finding no probative similarity between two songs where "the call and response applied only generically to the two songs and was executed in defendants' song 'in a different way and to varying degrees'").  The AIWs similarly contain a five-note sequence, accompanied by a vocalized "la" sounding with each of the notes.  *See supra* § II.A.2.

Plaintiff's conclusory assertion that the AIWs are "strikingly similar to Plaintiff's five note melodic hook[8] in cadence, melody, and meaning," Dkt. No. 43 at ¶ 15, is unpersuasive.  First, no meaning is conveyed by Defendants' use of the five-note sequence and accompanying "la" expressions, *see supra* n.4; rather, the jingle purely conveys sounds.  *See Jones v. Atlantic Records*, No. 22-CV-893, 2023 WL 5577282, at *5-6 (S.D.N.Y. Aug. 29, 2023) ("short and commonplace phrases are not protectable") (citation omitted).  Similarly, although Plaintiff attempts to draw from the meaning of the Composition to support that of the Subject Work, his claim specifically divorces the words sung while playing the Composition from the Subject Work's five-note sequence.  Accordingly, Plaintiff's claim is best understood as alleging that Defendants actually copied the five-note sequence with its standard "cadence [and] melody" for use in their AIWs. Dkt. No. 47 at 4.  As Defendants do not appear to dispute that the two sets of five notes are the same, *see id*. at 1 (noting that the "Febreze Tagline employs a common melody consisting of a 3-2-1-2-1 pitch sequence of 'Mi-Re-Do-Re-Do[,]'" and Plaintiff's Composition "also contains a simple five-note sequence"), and viewing the Amended Complaint in the light most favorable to Plaintiff, the Court assumes that Plaintiff has alleged similarities probative of actual copying[9] and moves to the final infringement consideration: whether the alleged copying was illegal because of actionable substantial similarities between the works.

---

[8] The Court declines to adopt Plaintiff's description of the Subject Work as part of the Composition's "hook."  *See Pyatt v. Jean*, No. CV-04-3908 (TCP) (AKT), 2006 WL 8440910, at *1 (E.D.N.Y. Aug. 29, 2006) ("The 'hook' is the most identifiable phrase in a popular song.").

[9] The Court does not however find that the Subject Work and AIWs are so "strikingly similar" that the Court would allow the case to go forward in the absence of allegations of access because the similarities, discussed *infra* § IV.C, are not of a kind that could "only be explained by copying, rather than coincidence, independent creation, or prior common source."  *Clanton*, 556 F. Supp. 3d at 330 (noting that the "striking similarity test is applied with particular stringency in cases involving popular music") (quotation omitted).

**C.    Plaintiff has Insufficiently Alleged Actionable Substantial Similarities**

"[S]ubstantial similarity is 'always a required element of actionable copying,'" "'properly [considered] after the fact of copying has been established, as the threshold for determining that the degree of similarity suffices to demonstrate actionable infringement.'" *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 595 (S.D.N.Y. 2013) (quoting *Ringgold v. Black Ent. Television, Inc.*, 126 F.3d 70, 74 (2d Cir. 1997)).   "Generally, an allegedly infringing work is considered substantially similar to a copyrighted work if 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same.'" *Boisson v. Banian, Ltd.*, 273 F.3d 262, 272 (2d Cir. 2001) (quoting *Folio Impressions, Inc. v. Byer Cal.*, 937 F.2d 759, 765 (2d Cir. 1991)).   "Two works are not substantially similar as a matter of law if 'the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or if no reasonable jury, properly instructed, could find that the two works are substantially similar.'" *McDonald v. West*, 138 F. Supp. 3d 448, 454 (S.D.N.Y. 2015), *aff'd*, 669 F. App'x 59 (2d Cir. 2016) (quoting *Peter F. Gaito,* 602 F.3d at 63).   "District courts in this circuit may evaluate a question of substantial similarity at the motion to dismiss stage under Rule 12(b)(6)."   *Id*. at 453-54 ("in music copyright cases" "Courts in this district regularly … listen to the songs at issue when evaluating a motion to dismiss").

In the instant Opposition, Plaintiff argues that the Subject Work is protectable because Plaintiff has shown a valid copyright.  Dkt. No. 51 at 10.  However, Plaintiff's copyright covers the Composition as a whole and is not for the Subject Work as a stand-alone copyrightable expression.  In opposition to Defendants' first motion to dismiss, Plaintiff advanced a single argument that the Subject Work—as opposed to the entire Composition—is subject to copyright protection.  *See* Dkt. No. 37-1 at 7.  Plaintiff's reliance on only *TufAmerica, Inc. v. WB Music*

*Corp.*, 67 F. Supp. 3d 590 (S.D.N.Y. 2014), is misplaced.  There, the court "assumed for purposes of th[e] motion that plaintiff ha[d] valid copyrights in the … Composition."  *Id*. at 593 & n.10. Ultimately, however, the court disagreed with plaintiff's assumption "that every copying of any part of another artist's protected work is infringement," instead holding that there was "no plausible claim of substantial similarity," and granted dismissal.  *Id*. at 598-99.

Having carefully reviewed the Amended Complaint, the parties' arguments, and the Composition and AIWs, the Court finds that the similarities between the works concern only *de minimis* "non-copyrightable elements of the [Subject W]ork" and "no reasonable jury, properly instructed, could find that the [AIWs] are substantially similar."  *See, e.g.*, *Peter F. Gaito*, 602 F.3d at 63 (quoting *Warner Bros. Inc. v. Am. Broad. Cos.*, 720 F.2d 231, 240 (2d Cir. 1983)).  Even if Defendants had accessed the Composition and distilled the Subject Work from the Composition—despite the fleeting background role of the Subject Work in the Composition, *see supra* § IV.B[10]—the Subject Work standing alone as a five-note sequence without any distinctively original lyrics, tempo, melody, tone, repetition, or cadence simply does not present "protectable elements" necessary to advance Plaintiff's putative infringement claim.  *See McDonald*, 138 F. Supp. 3d at 454 ("common rhythms, song structures, and harmonic progressions are not protected" by copyright law); *Logical Operations Inc. v. 30 Bird Media, LLC*, 354 F. Supp. 3d 286, 298

---

[10] In his Opposition, Plaintiff raises the new allegation that the Subject Work appears in the Composition three times.  Dkt. No. 51 at 8.  "Because a plaintiff cannot raise allegations not raised in its complaint in a brief in opposition to a motion to dismiss, the Court does not take notice of these allegations." *Clanton*, 556 F. Supp. 3d at 327 (citing *Cal Distrib., Inc. v. Cadbury Schweppes Ams. Bevs., Inc.*, No. 06 Civ. 0496, 2007 WL 54534, at *6 (S.D.N.Y. Jan. 5, 2007)).  Were the Court to nevertheless consider Plaintiff's new allegation, the analysis would not change because (1) the two additional instances are still quantitatively small in the context of the Composition, and (2) the five-note Subject Work is not an obviously significant portion of the Composition, because (a) the Subject Work occurs in differing contexts overlaid with varied words, and (b) no occurrence of the Subject Work is prevalent (i.e., stands out) over the accompanying words.

(W.D.N.Y. 2018) ("Single words, short phrases, and standard fonts are not generally protectible subject matter."); *Lane v. Knowles-Carter*, No. 14 Civ. 6798 (PAE), 2015 WL 6395940, at *6 (S.D.N.Y. Oct. 21, 2015) (granting motion to dismiss where two songs' "use of a common four-bar phrase, if found, would not establish substantial similarity between them"); *Poindexter v. EMI Record Grp.*, No. 11-cv-559 (LTS)(JLC), 2012 WL 1027639, at *4 (S.D.N.Y. Mar. 27, 2012) ("a single note is not entitled to copyright protection"); *see, e.g.*, *Acuff-Rose*, 155 F.3d at 143 (the phrase "'[y]ou've got to stand for something, or you'll fall for anything,' lacks originality and was therefore not protected" by the plaintiff's copyright); *Newton v. Diamond*, 388 F.3d 1189, 1195-96 (9th Cir. 2004) (no substantial similarity where allegedly infringing work sampled a three note sequence and repeated it on loop); *Pickett v. Migos Touring, Inc.*, 420 F. Supp. 3d 197, 206-08 (S.D.N.Y. 2019) ("Having carefully listened to the two songs, the Court concludes that the similarity between the two works concerns only 'unprotectible elements' of Plaintiff's Work" "and is, therefore, not protected by the copyright laws."); *Rudkowski v. MIC Network, Inc.*, No. 17 CIV. 3647 (DAB), 2018 WL 1801307, at *4 (S.D.N.Y. Mar. 23, 2018) ("An individual frame clearly represents an extremely small fragment of the whole Video."); *cf. Bright Tunes Music Corp. v. Harrisongs Music, Ltd.*, 420 F. Supp. 177, 178, 180 & n.2 (S.D.N.Y. 1976) (finding musical sequences of three notes ("sol-mi-re") and five notes ("sol-la-do-la-do") not novel, but their repetitions in "a highly unique pattern" sufficiently substantially similar to sustain a copyright claim where the two songs were "virtually identical except for one phrase").  The Court finds that an ordinary observer would be disposed to overlook the similarities between the Subject Work presented in the Composition and the AIWs as, at most, *de minimis* copying.  As such, Plaintiff's claim for infringement is denied for insufficient allegations of actionable substantial similarities between the Subject Work and the AIWs.

**D.    Leave to Amend**

When a complaint has been dismissed, "[t]he court should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2).  However, a court may dismiss without leave to amend when amendment would be "futile," or would not survive a motion to dismiss.  *Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 491 (2d Cir. 2011).  Here, further amendment would be futile because Defendants' use of the five-note sequence from the copyrighted Composition would still be *de minimis*.  *See, e.g.*, *Rudkowski*, 2018 WL 1801307, at *4.  Accordingly, the Amended Complaint is dismissed with prejudice and without further leave to amend.

**V.     CONCLUSION**

Accordingly, the Court hereby

**ORDERS** that Defendants' motion to dismiss, Dkt. No. 46, is **GRANTED in its entirety**; and the Court further

**ORDERS** that the Amended Complaint, Dkt. No. 43, is **DISMISSED with prejudice and without leave to amend**; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on the parties in accordance with the Local Rules, and to close the case.

**IT IS SO ORDERED.**

Dated:  September 22, 2023
            Albany, New York

Anne M. Nardacci
U.S. District Judge